# Supreme Court of Texas

No. 24-0007

In re Brittanye Morris,

*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

Justice Devine did not participate in the decision.

Our Court has long held that "a candidate's access to the ballot is an important value to our democracy." *In re Green Party of Tex.*, 630 S.W.3d 36, 40 (Tex. 2020) (citing *In re Francis*, 186 S.W.3d 534, 542 (Tex. 2006)).  Ballot access ensures that the people decide who their leaders will be, and thus it "lies at the very heart of a constitutional republic." *Id.* at 37 (quoting *Francis*, 186 S.W.3d at 542).  Accordingly, "any statutory provision that restricts the right to hold office must be strictly construed against ineligibility." *Id.* at 39 (quoting *State v. Hodges*, 92 S.W.3d 489, 494-95 (Tex. 2002)).

In 2023, the Legislature added new disclosure requirements for candidates who seek to be elected to judicial office. *See* TEX. ELEC. CODE § 141.0311.  These disclosures are directed to informing the electorate about a candidate's experience, including any record of attorney or

judicial discipline, the nature of the candidate's legal practice, and judicial or courtroom experience. *Id.* § 141.0311(b), (c). The statute requires disclosure, but it does not disqualify a candidate from holding office based on the content of the disclosure. *See id.*

One of the disclosures required in the new law is the candidate's State Bar of Texas identification number. *Id.* § 141.0311(b)(1). A state bar number can confirm that a candidate is licensed to practice law, and it can lead to information about the candidate's professional experience, including any record of discipline or sanction.

Relator Brittanye Morris applied for a place on the Harris County Democratic Party primary ballot for the 333rd Judicial District Court. In error, she provided her driver's license number rather than her state bar number on the application form. Because of this error, Respondent Michael Patrick Doyle, the Chair of the Harris County Democratic Party, rejected Morris's application as a candidate for judicial office and denied her a place on the Democratic Party primary ballot. The question presented in this case is whether Morris's failure to comply with the state bar number disclosure requirement results in her exclusion from the primary ballot. Because the Election Code does not provide such a consequence and we strictly construe election statutes against ineligibility, we conditionally grant relief ordering the Chair to certify Morris's name for inclusion on the primary ballot.

**I**

Judge Morris seeks re-election as Judge of the 333rd Civil District Court of Harris County, Texas. Morris submitted her application form on December 8, 2023, for a place on the Democratic Party primary ballot.

2

In accordance with Section 141.0311(b)(1) of the Texas Election Code, the application form asks candidates to include their state bar numbers. Morris instead supplied her Texas driver's license number. The County Chair initially accepted Morris's application and listed her as a candidate on the Texas Secretary of State's website.

Opposing candidate and real party in interest Tracy Good alerted the County Chair to Morris's error on December 14—three days after the deadline to apply for candidacy. Morris responded that she had provided her driver's license number inadvertently, that her state bar number is otherwise available as a public record, and that it is not disputed that she is a licensed attorney. On December 15, the Chair withdrew his acceptance of Morris's application for candidacy and ordered her removed from the primary ballot. Morris amended her application and resubmitted it the same day. The Chair did not accept the amended application. Morris sought and was denied mandamus relief from the court of appeals. She also sought injunctive relief. That, too, was denied.

Morris now seeks mandamus relief from this Court, asking that we order the Chair to certify Morris's name for inclusion on the 2024 Democratic Party primary ballot for the office of Judge of the 333rd Judicial District Court. In support of her request, she raises three main arguments. First, she contends that Chapter 172 controls applications to appear on a primary ballot. Chapter 172 does not incorporate the newly added Section 141.0311 by reference (as it does for the existing Section 141.031). Thus, Chapter 172 does not provide a local party chair with authority to remove a candidate from the primary ballot based on

3

a failure to comply with Section 141.0311. Second, Section 141.0311 does not list exclusion from the primary ballot as a possible consequence for failure to comply with the statute. Finally, Morris invokes the common law right to cure her error that this Court recognized in *In re Francis*, 186 S.W.3d 534 (Tex. 2006), which established the principle that courts must strictly construe election statutes to favor a candidate's inclusion on a ballot.

The Chair responds that Morris violated the plain language of Texas Election Code Section 141.0311(b)(1) and therefore did not comply with all "applicable requirements" of an application for judicial office, as Chapter 172 requires. TEX. ELEC. CODE § 172.0222(g). Under Chapter 172, a party chair "shall reject" a candidate's application for office when the applicable requirements are not met. *Id.* The Chair further determined that the Election Code forecloses any amendments to a ballot application after the filing deadline, so Morris is not entitled to an opportunity to cure her error. *Id.* § 172.0222(i). Good filed a brief largely echoing the Chair's arguments.

## II

When an Election Code provision does not expressly direct the consequence for a candidate's failure to comply with a ballot application requirement, "we apply a presumption against removing parties from the ballot." *Green Party*, 630 S.W.3d 36 at 39 (citing *Francis*, 186 S.W.3d at 542). This presumption arises because "[t]he public interest is best served when public offices are decided by fair and vigorous elections, not technicalities leading to default." *Francis*, 186 S.W.3d at 542. In addition, courts should interpret election statutes to avoid any

4

"potential constitutional problems that might be implicated if access to the ballot [is] unnecessarily restricted." *Id.*

Election Code Chapter 172 directs the county chair of the political party to review applications to appear on the party's primary ballot for offices, like this one, that are "filled by voters of a single county." *See* TEX. ELEC. CODE § 172.022(a)(2). The county chair "shall review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the general primary election ballot." *Id.* § 172.0222(b). "If an application does not comply with the applicable requirements, the [county chair] shall reject the application . . . ." *Id.* § 172.0222(g).

The question here is whether a requirement found in Section 141.0311 is an "applicable requirement[]" justifying the chair's rejection of Morris's application under Chapter 172. We conclude that it is not, for two reasons.

First, Chapter 172, which regulates applications for candidates seeking to appear on a party's primary ballot, does not incorporate or reference newly added Section 141.0311 in listing the requirements of an application to be "entitled to a place on the general primary election ballot." *Id.* § 172.021(a). In contrast, Chapter 172 expressly incorporates Section 141.031, making that information part of Chapter 172's "applicable requirements." *Id.* § 172.021(b) ("An application must, *in addition to complying with Section 141.031*, be accompanied by the appropriate filing fee . . . ." (emphasis added)). Section 141.031 requires prospective candidates to provide identification information and

5

indicate their constitutional and statutory eligibility to hold office, so it makes sense that a candidate's failure to comply with these application requirements authorizes the party chair to exclude that candidate from the ballot. Section 141.031 is thus among the "applicable requirements" the chair "shall review" to determine whether the application "complies with the requirements . . . that it must satisfy for the candidate's name to be placed on the general primary election ballot," or whether to "reject" the application because it "does not comply." *Id.* § 172.0222(b), (g). The "Additional Requirements for Application for Judicial Office" found in Section 141.0311 are not among Chapter 172's "applicable requirements," as they are not referenced in Chapter 172's provisions that authorize a party chair to reject an application and exclude a candidate from the primary ballot.

The County Chair argues that Chapter 172 need not directly incorporate Section 141.0311 because Section 141.0311 inherently applies to all ballots for judicial office, not just general election ballots. That much is correct, but this argument does not answer whether exclusion from the primary ballot under Chapter 172 is a consequence of failure to comply with Section 141.0311. While Section 141.0311's disclosures are not inconsistent with the requirements that Chapter 172 expressly incorporates, the Legislature has not expressly made them "applicable" within Chapter 172 as it has for the requirements found in Section 141.031.

Second, Section 141.0311 within its text warns of various consequences that can result from a candidate's failure to comply with its provisions. *Id.* § 141.0311(d). Exclusion from the ballot is not listed

6

among them. Nor does Section 141.0311 reference Chapter 172 or a party chair's authority to exclude a prospective candidate from the ballot. Rather, Section 141.0311 requires the judicial application form to notify candidates "that knowingly providing false information on the application, in addition to other penalties prescribed by law, constitutes professional misconduct subject to public sanctions or censure by the State Commission on Judicial Conduct or the state bar, as applicable." *Id.* The Legislature may have considered these penalties sufficient incentive for applicants to comply with the new judicial disclosure requirements in a sworn application. Such an interpretation is consistent with Section 141.0311's effort to educate the voters about a candidate's legal and judicial experience beyond the minimum qualifications for office. The statute seeks to inform about the candidate's background, but it does not add to the constitutional and statutory qualifications to hold office. Voters certainly may consider failures and errors in disclosure in evaluating whether a candidate is qualified to hold judicial office. The statute, however, does not impose a barrier to a candidate's access to the ballot based on deficiencies in these disclosures.

In the absence of an express directive to exclude candidates from the ballot for a failure to comply with Section 141.0311, we rely on our longstanding principle of construing the Election Code against ineligibility. *Green Party*, 630 S.W.3d at 39. A county chair can review the application, return it to the applicant for amendment within the applicable timeframe, and even publicize to voters any deficiencies in compliance with Section 141.0311. A chair also retains the authority to

7

reject any application that fails to comply with the applicable requirements of Chapter 172, including by reference the requirements of Section 141.031. But a chair has no discretion to exclude a candidate from the ballot solely for failure to comply with Section 141.0311.

When a candidate has been denied a place on the ballot due to a party official's error of law, we have granted mandamus relief. *Francis*, 186 S.W.3d at 543. Therefore, without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant relief and direct the County Chair to certify Morris's name for inclusion on the 2024 Democratic Party primary ballot for the office of Judge of the 333rd Judicial District Court. We are confident the Chair will promptly comply, and our writ will issue only if he does not.

**OPINION DELIVERED:** January 10, 2024

8