**In re The Honorable Karen ANGELINI.**

No. 06–0088.

Supreme Court of Texas.

Feb. 24, 2006.

John E. Clark, Rand J. Riklin, Goode Casseb Jones Riklin Choate & Watson, P.C., San Antonio, for Relator.

Chad Wilson Dunn, Riddle & Brazil, LLP, Houston, for Respondent.

Lauro A. Bustamante Jr., San Antonio, for Real Party.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice MEDINA and Justice GREEN joined.

In this original proceeding, the Honorable Karen Angelini, currently Justice of the Fourth Court of Appeals, Place Five, seeks mandamus relief against Charles E. Soechting, State Chair of the Texas Democratic Party. The latter initially listed Lauro A. Bustamante as a candidate for Place Seven on the Fourth Court of Appeals, then at the filing deadline as a candidate for Place Five, then after the deadline as disqualified, and finally as a candidate for Place Five again after this Court issued three opinions on January 27, 2006.[1] Because we find fact issues that must be determined after a hearing on the merits, we deny the petition for writ of mandamus.

Angelini alleges "multiple defects" in Bustamante's filings that could not be cured by the filing deadline. The facsimile date and time stamps on the filings indicate that they were transmitted to the Party between 6:04 and 6:40 p.m. on January 2, 2006—after the 6:00 p.m. filing deadline.[2] Angelini reports that a Democratic Party representative told her Bustamante's papers were actually received before the deadline, but that the Party's facsimile clock had not been reset from Daylight Savings Time. In any case, Angelini argues that our decision in *Francis* did not authorize relief for a late-filer like Bustamante, citing the following:

> [W]e emphasize several limitations on today's holding. First, it concerns only facial defects that are apparent from the four corners of a candidate's filings; it does not reach forgery, fraud, or other non-accidental defects discoverable only by independent investigation. Second, it concerns only early filings that allow time for corrections after the state chair's review: no additional time will be available for candidates who file at the last minute so that review cannot be completed before the filing deadline. Third, it does not allow political parties or candidates to ignore statutory deadlines; it allows candidates only the time that the Election Code was designed to give them. Fourth, it concerns only defective filings that have erroneously been approved; it does not change what the Election Code says party chairs should and must reject.[3]

As Bustamante did not file until at or after the deadline, she argues that the State Chair did not review it until after the deadline, did not erroneously approve it, and did not deny Bustamante the opportunity to cure that the Election Code provides to early filers.

1. See *In re Francis*, 186 S.W.3d 534, 2006 WL 197976 (Tex.2006); *In re Holcomb*, 186 S.W.3d 553, 2006 WL 197599 (Tex.2006); *In re Sharp*, 186 S.W.3d 556, 2006 WL 197604 (Tex.2006).

2. *See* TEX. ELEC. CODE § 172.023(a).

3. *Francis*, 186 S.W.3d at 543.

In response, Bustamante has filed an affidavit in which he states that the Democratic Party reviewed his filings as each page arrived and approved them. Further, he challenges the authenticity and veracity of all Angelini's evidence about his filings. Finally, he avers that he had time to correct any mistakes before the filing deadline because he had staff, computers, facsimile machines, and a notary available.

■ "It is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding."[4] There are several such factual disputes here, including (1) whether Bustamante filed his documents before the deadline, (2) whether he complied with all statutory requirements except for facial defects that are apparent within their four corners, (3) whether the Party had sufficient time to complete its statutory review of his filings before the deadline,[5] (4) whether after that review but before the deadline the Party erroneously notified Bustamante that his filings complied with statutory requirements,[6] and (5) whether Bustamante could have cured any facial errors before the deadline had the State Chair properly notified him of those defects. If the trial court answers any of these questions "No," then we agree Angelini would be entitled to mandamus relief.[7] The parties may of course raise legal and factual issues other than these.

We decline the dissent's invitation to disqualify Bustamante without giving him a hearing. First, he does not admit that his filings were defective; that is instead our colleague's conclusion. While he avers that he had "time for corrections," he never concedes that his filings needed any. More important, he challenges the authenticity and veracity of the copies of his filings submitted by Angelini, the only basis upon which we could make any decision.

Second, in concluding that Bustamante filed only 20 signatures that complied with the Election Code, the dissent decides several factual and legal issues without a hearing and barely any mention. Bustamante's petition contains almost 400 signatures, but the dissent disqualifies all but 20 because only two petition pages were signed by a circulator. Voters' signatures are valid under the Election Code if they appear in the same "part" of the petition as the circulator's affidavit, and the same "page" of the petition as other items like the place number discussed in *Francis*.[8] We need not decide today whether "part" and "page" are the same because, depending on what facts the trial court finds, it may be irrelevant in this case.

The dissent's approach to defects in a candidate's filings has not been the law for several years. A majority (not a plurality) of this Court held in *Gamble* that defective filings could be remedied after the filing deadline to correct a party official's violation of a statutory duty.[9] *Gamble* concerned an application for office rather than a petition, but the Election Code treats the two as one document,[10] so we cannot treat them differently.

4. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990).

5. *See* TEX. ELEC. CODE § 141.032(c).

6. *See id.* § 141.032(a).

7. *See Francis*, 186 S.W.3d at 545.

8. *See* TEX. ELEC. CODE § 141.063(a)(3)-(4).

9. *In re Gamble*, 71 S.W.3d 313, 318 (Tex. 2002).

10. TEX. ELEC. CODE § 141.032(c) ("If an application is accompanied by a petition, the petition is considered part of the application").

Any "mystery" about the duty of state party chairs can be cleared up by reading the statute, which does *not* require them to do the work for any candidate, but *does* require them to review filings "as soon as practicable" after receipt and "immediately deliver" written notice of defects.[11] If the Legislature intended for less-than-perfect candidates to get what the dissent thinks they deserve, there would be no reason for state chairs to review anything before the deadline, and certainly no reason to move quickly.

As both Angelini and Bustamante are unopposed in their respective primaries, there should be ample time before the general election in November for a trial court to make its findings, and for any appellate review to be conducted first in the court of appeals rather than this Court. Generally, such proceedings "must be presented first to the court of appeals unless there is a compelling reason not to do so."[12]

For the foregoing reasons, we deny the petition for writ of mandamus.

Justice JOHNSON filed a concurring opinion, in which Justice O'NEILL joined.

Justice WAINWRIGHT filed a dissenting opinion.

Justice WILLETT did not participate in the decision.

Justice JOHNSON, joined by Justice O'NEILL, concurring.

I agree that mandamus relief should be denied because factual disputes exist. Once that conclusion has been reached and expressed, however, no further controver-

sy is before us as this matter is postured. I would not opine as to what relief is appropriate in the event of future hearings and if particular factual determinations result from those hearings.

Further, although I joined with Justice Wainwright in dissenting from the Court's decisions in *Francis* and *Holcomb* and still believe that those cases were wrongly decided, the cases are now precedent of this Court. Thus, I cannot join his dissent. I concur in the Court's decision to deny relief.

Justice WAINWRIGHT, dissenting.

The Court acknowledges that the Respondent's petition did not comply at the filing deadline with the requirements of the Texas Election Code, yet it refuses to grant the mandamus and hold that respondent did not qualify as a candidate for Justice of the Fourth Court of Appeals, Place 5. I therefore respectfully dissent.

I.

On the filing deadline, Lauro Bustamante's petition to be certified as a primary candidate for the Court of Appeals for the Fourth District, Place 5, contained less than half of the required 250 signatures. TEX. ELEC. CODE § 172.021(e). This assumes, notwithstanding all the reasons not to, that the circulator's signature on two petition pages validated the petition signatures on other parts of his petition.[1] *See* section II, *infra.* Rather than simply affirm the invalidity of the petition and enforce the Election Code's stricture that only candidates who comply with its requisites by the deadline may be certified for the ballot, the Court extends the legisla-

---

11. *Id.* § 141.032(c), (e).

12. *See* TEX. R. APP. P. 52.3(e); *The Republican Party of Texas v. Dietz,* 940 S.W.2d 86, 93–94 (Tex.1997).

1. There are a number of other irregularities in Bustamante's petition that are unnecessary to discuss at this time.

tive deadline so Bustamante can attempt to cure the defects in his petition. *See* TEX. ELEC. CODE §§ 141.065, 172.021. The Legislature's considered judgment notwithstanding, the Court in this case grants a four-week extension of the deadline.

All parties before the Court—Real Party Bustamante; Respondent Charles Soechting, chairman of the Texas Democratic Executive Committee; and Relator, the Honorable Karen Angelini, Justice of the Court of Appeals for the Fourth District, Place 5—acknowledge that Bustamante's petition for Place 5 on file with the party chair by the 6:00 p.m. deadline on January 2, 2006 (or even forty minutes later), was not compliant.[2] *Id.* § 172.023(a). His filing was not even close to meeting the Election Code requirements. Bustamante did not file a petition that he claims was valid until January 30, when he filed a revised petition arguably in an attempt to validate many additional signatures on his petition. The fact that the petition was defective as of the deadline should resolve the case, irrespective of the fact issues the Court identifies. *See In re Francis*, 186 S.W.3d 534, 543 (Tex.2006) (Wainwright, J., dissenting). The Court should enforce de-certification of candidates under the Election Code if their failure to include information in their applications "would contravene express requirements and impair the purpose of the Election Code." *Id.* Resolution of the fact issues the Court identifies is unnecessary to resolve this case.

The Court denies the mandamus because of five factual disputes: (1) whether Bustamante filed his application and petition before the deadline, (2) whether he complied with all statutory requirements except for facial defects that are apparent within the four corners of his filings, (3) whether the Party had sufficient time to complete its statutory review of his filings before the deadline, (4) whether the Party notified Bustamante before the deadline that his filings complied with statutory requirements, and (5) whether Bustamante could have cured any facial errors before the deadline had the State Chair notified him of the defects rather than approving them. 186 S.W.3d 538, 560.

The first factual dispute is immaterial under the Election Code as it is undisputed that the petition Bustamante filed failed to comply with the Code's requirements on the filing deadline, and for four weeks thereafter. Only because the Court created a cure period on January 27, 2006 in *Francis* does it matter whether Bustamante's defective petition was filed at 5:04 p.m. rather than 6:04 p.m. *Francis*, 186 S.W.3d at 543. Assuming his petition was filed at 5:04 p.m., it was statutorily defective for failing to include, as of 6:00 p.m. on January 2, 2006, information that is important to the purpose of the statute. That should end the dispute. The other fact issues come into play only because the Court decided in *Francis* that if a party chair does not catch facial "technical" or "minor" defects before the deadline, the candidate is entitled to an opportunity to cure a defective petition after the filing deadline. *See id.* It is a mystery why the state party chairs have to do the work for the candidates,[3] but that is the law now.

---

**2.** The Texas Democratic Party sent Bustamante a letter, dated January 9, 2006, stating that his filing for the Fourth Court of Appeals, Place 5, "was rejected because a determination could not be made that your petitions were correctly and completely acknowledged

and therefore fulfilled the requirements of form, content and procedure."

**3.** According to the Court, the purpose of having a party chair review a candidate's filings as soon as practicable must be to allow the

These factual questions would not be important to the Court today if it had not previously extended the filing deadline. Predictably, this case is the result of *Francis* and *Holcomb*.

The Court's opinions in *Francis, Holcomb*, and this case raise a number of concerns. Even if one accepts that it was proper for the Court to create a cure period beyond the statutory deadline, we had previously established a high hurdle for extending the deadline. "[I]t is an extraordinary departure from the careful planning of the legislature, and not to be invoked lightly." *In re Gamble*, 71 S.W.3d 313, 318 (Tex.2002). The holdings in *Francis, Holcomb*, and this case indicate, instead, that extending the filing deadline is no longer extraordinary. The new cure period apparently applies to any disqualifying mistakes on a judicial petition, without regard to whether they are minor or major, technical or substantive. In *Francis*, the Court recognized that the Code's requirement that the petition identify the office for which a candidate is running is important to prevent fraud or voter confusion. 186 S.W.3d at 551. Nevertheless, the Court characterized the omissions as "technical" or "minor" defects and allowed a post-deadline cure. *Id.* In *Holcomb*, the Court recognized that a petition with duplicate signatures was invalid and yet allowed a candidate to obtain replacement signatures after the deadline. *See Holcomb*, 186 S.W.3d at 555. In this case, Bustamante was short at least half the 250 signatures required by statute, yet the Court allows him an opportunity to show he could cure disqualifying defects.

*Francis, Holcomb*, and this case raise other problems. Our legal system is now faced with election challenges from persons whose filings were demonstrably and admittedly inadequate as of the filing deadline, which likely would not have been countenanced before *Francis* and *Holcomb*. And the Court must now define new standards to implement the holdings of these cases: How long is a "cure period"? If filing a petition more than 50% short of the required quantity of signatures is a technical mistake entitling the filer to cure, which defects, if any, cannot be cured after the filing deadline? The Court says only facial "technical" or "minor" defects can be cured post-deadline, as was the case in *Gamble*, but, as shown, the purview of those terms must be significantly widened for that to be so after *Francis* and *Holcomb*. How long before the filing deadline must an application or petition be filed to have been filed "early" enough to entitle the applicant to fix a defective petition? *See Gamble*, 71 S.W.3d at 318 (Section 141.032 "serves as a safety net for candidates who file their applica-

candidate to cure defects after the filing deadline that were not caught by the chair. *See Francis*, 186 S.W.3d at 539; *see also In re Holcomb*, 186 S.W.3d 553, 554 (Tex.2006). In addition to the other problems discussed, the Court's conclusion elevates the party chair's role in the election process. The more likely purpose of the required review by the party chair is to identify the pool of applicants who satisfy statutory requirements to be certified as candidates as of the filing deadline. This allows the pool of candidates and the election machinery to proceed in an orderly process through the campaign to the election. Some person or entity must perform the func-

tion of certifying candidates. In some states, the secretary of state or other government official accepts candidate applications and certifies candidates. *See, e.g.,* CAL. ELEC. CODE § 8100 (requiring primary election nomination documents to be filed either with the Secretary of State or the county election official, depending on the office); FLA. STAT. ch. 99.061 (2005) (specifying that each person seeking to qualify for nomination or election must file qualification papers with the Department of State or the local election supervisor, depending on the office). For statewide elections in Texas, the party chair performs this function. *See* TEX. ELEC. CODE § 141.032.

tions early in the filing period ....”). In *In re Sharp*, 186 S.W.3d 556, 557, 2006 WL 197604 (Tex.2006), the Court granted the candidate the opportunity to cure a presumed defective petition filed the day of the deadline, notwithstanding *Gamble*'s holding that such equitable relief may be considered only for parties who file their applications “early in the filing period.” *Gamble*, 71 S.W.3d at 318. In *Francis*, the Court cited the same early filing requirement, 186 S.W.3d at 540–41, but for no apparent purpose, as the Court ignored the requirement that very day when it issued *Sharp*. Under the facts of this case, the Court concludes that filing less than an hour before the deadline is early enough to entitle the applicant to an opportunity to effect post-deadline compliance. None of these problems exist in the language of the Election Code; the Court created them.

The Court attempts to bring this case under the umbrella of *Gamble*. *Gamble* involved what was truly a clerical error—all petition pages correctly indicated the 270th District Court, but the cover application indicated the 190th District Court. 71 S.W.3d at 315. Judge Gamble filed an application and petition with all the necessary information, including all required signatures. *Id.* Judge Gamble also filed his application two weeks before the deadline, not an hour or a few days before the deadline. *Id.* These facts distinguish *Gamble* from *Francis*, *Holcomb*, and this case.

Legally, *Gamble* was also a different animal. In *Gamble* the Court warned against extending the filing deadline and did not lightly discard it. *Id.* at 318. The *Gamble* Court did not allow a candidate to

file, for the first time, a petition that included information necessary to avoid impairing the purpose of the statute four weeks after the Legislature's deadline. Moreover, the Court contradicts *Gamble* in holding that *Francis* only applies to “defective filings that have been erroneously approved.” *Francis*, 186 S.W.3d at 543. The party official in *Gamble* did not approve but rejected the application. 71 S.W.3d at 315. The reasoning in *Gamble* was ostensibly followed in *Francis*, but *Gamble* was limited to candidates who file their applications early in the filing period. *Id.* at 318. It would ridicule logic to attempt to argue that Bustamante filed early. The Court, therefore, has issued two contradictory standards on this point. I do not hazard a guess as to which is controlling. This case is not *Gamble*, and neither are *Francis* and *Holcomb*. *Sharp* is procedurally distinguishable from all three of these cases.[4]

II.

I will respond to the Court's critiques.

The Court says that Bustamante did not admit that his petition was not compliant on the January 2 filing deadline. The record speaks for itself. First, Bustamante states that he will prove that he filed early enough “to allow for corrections” in his petition, and he never argues that his January 2 petition was valid. Second, Respondent Soechting, the Democratic party chair, told Bustamante by letter dated January 9 that his application filed on January 2 was rejected. It was defective for failure to “correctly and completely acknowledge” the signatures on the petition. Nothing in the record shows that Bustamante challenged the party chair's

---

4. Sharp offered this Court no explanation why he could not seek relief from the trial court or court of appeals, as required by our rules of appellate procedure unless there is a

compelling reason not to do so. TEX. R. APP. P. 52.3(e); *Sharp*, 186 S.W.3d at 557 (Johnson, J., dissenting).

conclusion that his January 2 filing lacked proper acknowledgments on the petition. Bustamante took no action to gain a place on the ballot until after the Court issued *Francis* and *Holcomb*, at which time he sought an opportunity to resurrect a noncompliant filing. Finally, the Court acknowledges, as it must, that Bustamante's petition on file as of the deadline was defective. *See* 186 S.W.3d at 560 (One factual dispute is "whether Bustamante could have cured any facial errors before the deadline had the State Chair properly notified him of those defects."). Otherwise, the opportunity to cure would not be needed and the evidentiary hearing ordered by the Court would be a waste of time.

The Court suggests that Bustamante's January 2 petition included enough signatures to satisfy the Election Code. One requirement for a signature on a petition to be valid under section 141.063(3) of the Election Code is that each "part of the petition" in which the voter's signature appears includes a circulator's affidavit. The circulator's affidavit states the circulator read certain information to the signer, witnessed each signature, verified each signer's registration status, and believes each signature to be genuine. TEX. ELEC. CODE § 141.065. To be certified as a candidate for a place on a court of appeals, a candidate must obtain 250 valid signatures. *Id.* § 172.021(e). On the filing deadline, Bustamante filed a petition to be certified as a candidate for the Court of Appeals for the Fourth District, Place 5, in which only two of the 42 petition pages have a signed circulator's affidavit. Whether the reference to "part" in section 141.063(3) requires each page or each section of a petition to have a signed circulator's affidavit, Bustamante did not supply 250 valid signatures by the statutory deadline.

The Court suggests that Bustamante's petition contains over 400 valid signatures. The face of Bustamante's filing shows that, as of the deadline on January 2, he had no more than 20 signatures on petition pages with signed circulator affidavits. Neither Bustamante nor the Democratic party chair argue that the two circulator affidavits signed by Bustamante validate larger "parts" of his petition. However, even if the statute's reference to "parts" refers to groups of petition pages, Bustamante still lacks the required 250 signatures for several reasons. First, the petition is not divided into discernable sections; there are not multiple, defined "parts." At best, a circulator's affidavit might apply not only to the page containing it but also to subsequent consecutive pages circulated by the same person. Here, the first petition page includes a circulator affidavit signed by Bustamante designated as "Page 1 of 28," followed by a single unsigned petition page. Mary Cortez is identified as the circulator of the next two pages, although both pages lack a signed circulator affidavit.[5] The next 29 pages do not identify a circulator or include a signed circulator affidavit. The final grouping of nine pages begins with a page identifying Bustamante as circulator, includes a signed affidavit, and is designated "Page 1 of 15" even though there are only 8 pages that follow it. Bustamante does not attempt to reconcile this contradictory information in his filing or define the "parts" of his petition. Even giving Bustamante the benefit of the doubt and creating "parts" from the face

---

5. The pages apparently circulated by Cortez are numbered "1 of 3" and "2 of 3," but the page designated "3 of 3" appears later in the pages of the petition. Because her pages were numbered, these pages are at least arguably a separate "part" of the petition, even though they are not consecutive in his filing.

of his petition, he falls almost 150 signatures short of the required 250. Notably, the Court does not assert that the 400 signatures were valid or even that more than 20 are valid.[6]

The Court should clearly state the rule of law established by its recent holdings. Texas has to live with the opinions in *Francis, Holcomb,* and this case. They affect every Texan when used to determine which candidates may be certified for elective office. The Court should at least be clear so that this new law can be consistently applied by judges and understood by the public and the bar. The new regime established in *Francis, Holcomb,* and this case can be simply stated: The Court extends the filing deadlines for virtually any defects in a candidate's petition, irrespective of whether the defects are technical or substantive and whether the filing was at the last minute or early in the filing period.

### III.

The *Francis* and *Holcomb* opinions changed the legal landscape for applicants seeking certification to become candidates for judicial office. In this case, the Court wrestles with the problems these opinions created. Fortunately, the February 21 deadline to contest candidate applications has passed; otherwise, there would be more disruption caused to the election process, and I suspect we would see more of

these cases. *See* TEX. ELEC. CODE § 141.034(a).

---

6. The Court states that Bustamante challenges the authenticity and veracity of the petition pages in the mandamus record. I presume this is a reference to the following unintelligible statements contained in his "Repsonse [sic] to Statement of Facts":

The relator's facts are objected to as, [sic] unauthenticated, hearsay, and a misstatement of the facts. Specifically unauthenticated Texas Democratic Party official [sic].

Hearsay statements by Jim Boynton, a Texas Democratic Party official [sic]. I would all [sic] object to all faxes as hearsay and unverified or certified and true and correct records. I would object to any copies of applications and the accompanying 43 [though the record contains only 42] pages of petitions.

I assume the Court is able to decipher a valid objection from these hieroglyphics.