

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00115-CV
_____

IN RE TAD MAYFIELD

Original Mandamus Proceeding

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

Relator, Father to J.M., B.M., and M.M.,[1] has filed a petition for a writ of mandamus asking this Court to direct the 71st Judicial District Court of Harrison County, Texas, to vacate a temporary order appointing the children's foster parents as their joint managing conservators with the right to designate their primary residence, dismiss the foster parents' original petition seeking conservatorship of the children, and return the children to Relator. Father argues (1) that the appointment of nonparents as joint managing conservators was made in the absence of sufficient evidence to show that Father was an unfit parent and (2) that the trial court should have recused before the entry of the temporary order at issue. Because we conclude that (1) the trial court's factual determination that Father is unfit cannot be disturbed by mandamus and (2) Father waived his recusal complaint, we deny the petition for a writ of mandamus.

## I.      Standard of Review

"Mandamus is an extraordinary remedy, and to be entitled to such relief, a petitioner must show that the trial court clearly abused its discretion and that the petitioner has no adequate remedy by appeal." *In re Ater*, No. 06-21-00095-CV, 2021 WL 5263693, at *1 (Tex. App.—Texarkana Nov. 12, 2021, orig. proceeding) (quoting *In re Coats*, 580 S.W.3d 431, 435 (Tex. App.—Texarkana 2019, orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458 (Tex. 2008) (orig. proceeding). Father has no adequate appellate remedy because temporary orders in a suit affecting the parent/child relationship are not appealable. TEX. FAM. CODE

---

[1]To protect the confidentiality of the children, we refer to them by initials. *See* TEX. R. APP. P. 9.8(b)(2).

ANN. § 105.001(e); TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Supp.). Even so, Father must show that the trial court clearly abused its discretion.

"A trial court abuses its discretion if it reaches a decision that is so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law." *In re Ater*, 2021 WL 5263693, at *1 (citing *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)). "It is [Relator's] burden to show entitlement to the requested relief." *Id.* (quoting *In re Coats*, 580 S.W.3d at 435). Father must also show that he seeks "to compel a ministerial act not involving a discretionary or judicial decision." *Id.* (quoting *In re Coats*, 580 S.W.3d at 435) (citing *Walker*, 827 S.W.2d at 837; *In re Pilgrim's Pride Corp.*, 187 S.W.3d 197, 198–99 (Tex. App.—Texarkana 2006, orig. proceeding)).

## II.    Factual and Procedural Background

The evidence established that the children had been removed from Father in prior cases involving the Department of Family and Protective Services (Department). In the Department's first case, Father took a drug test on November 18, 2019. Before the results were returned, the trial court entered a final order, on November 21, 2019, removing the Department as a conservator and appointing Father permanent managing conservator of the children. Due to that order, the trial court dismissed the Department's first petition.

A few days after the November 21 order, Father's November 18 drug test results were returned and were positive for methamphetamine. As a result, on November 27, 2019, the

3

Department filed a second petition seeking to terminate Father's parental rights, alleging aggravating circumstances. On December 3, 2019, after an adversary hearing, the trial court found that there was a substantial risk of danger to the children if they remained in Father's home, appointed the Department temporary managing conservator of the children, and appointed Father temporary possessory conservator of the children. However, because of the Department's petition alleging aggravated circumstances, the trial court denied Father visitation based on his use of drugs "that influenced his ability to determine reality." Even so, the Department's second petition was dismissed on July 13, 2021, after the statutory deadline to decide the case had passed. The Department chose not to refile its petition.

Instead, on July 23, 2021, the children's foster parents filed a petition seeking sole managing conservatorship based on an allegation that Father and the children's mother engaged "in a history or pattern of child neglect."[2] The foster parents also requested that the trial court enter temporary orders appointing them temporary sole managing conservators. The affidavit in support of the foster parents' petition was similar to the one first attached to the Department's dismissed petition.

On August 10, 2021, the trial court held a hearing to consider temporary orders. The children's foster parent testified that the children had lived with the foster parents for

---

[2]Father argues that the foster parents relied on much of the evidence used by the Department in its prior cases and that the Legislature could not have intended to allow foster parents to "essentially seek to extend" the Department's dismissed cases. Yet, the Texas Family Code grants standing to file an original suit affecting the parent child relationship to "a person who is the foster parent of a child placed by the Department of Family and Protective Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition," and Father has cited to no cases barring foster parents from asserting claims similar to those raised by the Department in prior cases to which the foster parents were not a party. *See* TEX. FAM. CODE ANN. § 102.003(a)(12) (Supp.).

approximately twenty months, that Father had only made telephone visits with the children, and that Father had not provided financial support for them. According to the foster parent, this was Father's third Child Protective Services case. Although the Department's petition had been dismissed, the foster parent testified that it was not in the children's best interests to remove them from the foster home. During cross-examination, the foster parent admitted that there were no orders requiring Father to provide financial support or work family-based services and that Father was not to have any contact with the children.

Father testified that he was employed with a railroad company full time and had worked there for the past twenty-seven years. After the railroad company had transferred him to Nebraska, Father purchased a two-story, single-family home in Omaha in October 2020 in his name and lived there with his fiancée. Pictures of the home, Father's vehicles, and the children's rooms, with appropriate furniture and toys, were admitted into evidence.

Father testified that he had not made face-to-face contact with the children because of the trial court's orders in the Department's second case[3] but that he had visited with them twenty times via telephone and FaceTime in the past two years, believed he had a good relationship with his children, and loved them very much. Father admitted that he had been involved in three CPS cases involving drugs, and he also admitted that he had tested positive for methamphetamine in November and December 2019. Even so, Father testified that he had not been drug tested since July 2020, when he tested negative in both hair follicle and urinalysis tests, was subjected to

[3]Father believed that his appointment as sole managing conservator in the Department's first case entitled him to possession of the children and testified that he would have had the children in his possession if he had timely learned of the trial court's orders in both of the Department's cases.

random drug testing at work, had never failed a drug test at work, and had "done everything [he could] to prove sobriety and maintain sobriety." Father asked the trial court to return the children to him.

After hearing the evidence, the trial court took the matter under advisement. On August 16, 2021, the foster parents filed a pleading arguing that Father was an unfit parent. On August 18, 2021, the trial court held a hearing to announce its ruling regarding the foster parents' request for temporary orders.

During the August 18 hearing, the trial court found Father to be an unfit parent. The trial court then commented about his belief that Father's parental rights would have been terminated in the Department's second case had it not been dismissed due to the statutory deadline and that Father "wouldn't have gotten the[] children back anyway based on . . . the constant instability and drug use and problems that . . . the parents had." The trial court then engaged in the following exchange, which relates to Father's recusal complaint:

> [BY THE COURT:] It's hard for me not to take into consideration everything that I know about the case because when [Father] testified, a lot of the things that he testified to the other day were contrary to testimony that he had provided in the past, particularly the employment.
>
> He hadn't paid child support because he was always working odd jobs. He was out of a job at this time. You know, he was doing some construction work building or remodeling houses, and his employer actually said he did a good job at that.
>
> So I find it hard to believe that through all that I've dealt with him he's been employed by the railroad for 27 years because I know they pay well, and he was always -- there were -- there were issues with that.
>
> That's just one of the things that he testified to that is contrary to things that he had testified to in the past. I will -- he hasn't had visitation. I'm going to

6

let him have visitation at Getting Together Safely. I'll let him set that up once a month if he wants to do that, and he needs to start paying support. . . .

The next thing is based on the history that I have, I don't know that I can -- well, I know that I can't move forward as the judge in this case because of his conduct in the past, and so, [Father's attorney], I'm going to give you two options, and you get to decide this. [Father] filed a motion to transfer. If you want me to grant that . . . then I will do that, and I won't be the judge in the case. If you want it to remain in Harrison County, . . . I will recuse myself, and I will request that the -- that [the presiding judge of that administrative judicial region] appoint someone else to hear the case.

And so I'm going to leave you with that option as to which you would prefer.

At that point, Father's counsel selected the option to have the case transferred. The hearing continued, as follows:

THE COURT: [Father's counsel] said she wants the case transferred. . . So that's what I will do. If you'll get me an order on the transfer, I'll do that.

[Appellant's Counsel]: Okay. . .

THE COURT: Oh, [foster parents] will be appointed as the temporary managing conservators. [Father] will be the -- a temporary possessory conservator. . . . No, no, I'm going to make -- they're going to be joint managing -- I'm sorry. They'll be joint managing with [foster parents] determining the primary residence.

When asked who would draft the temporary order, Father's attorney said, "I'll be glad to work on that." On November 30, 2021, the trial court entered written temporary orders giving Father and the foster parents joint managing conservatorship of the children and granting Father supervised visitation.[4]

---

[4]The written order did not find that Father was an unfit parent.

7

### III. We Will Not Disturb the Trial Court's Factual Finding that Father Is Unfit on Mandamus Review

"The child's best interest is always a trial court's primary consideration in determining conservatorship issues." *Madore v. Strader*, No. 14-20-00147-CV, 2021 WL 4617936, at *5 (Tex. App.—Houston [14th Dist.] Oct. 7, 2021, no pet.) (citing TEX. FAM. CODE ANN. § 153.002). "The Family Code presumes that appointment of both parents as joint managing conservators or a parent as sole managing conservator is in a child's best interest, and it imposes a heavy burden on a nonparent to rebut that presumption." *Id.* (citing TEX. FAM. CODE ANN. § 153.131;[5] *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000) (explaining that natural parent "has the benefit of the parental presumption . . . and the nonparent seeking conservatorship has a higher burden")). This is because "the fit-parent presumption is 'deeply embedded in Texas law' as part of the determination of a child's best interest." *In re C.J.C.*, 603 S.W.3d 804, 812 (Tex. 2020). "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *Id.* at 814 (citing *Troxel v. Granville*, 530 U.S. 57, 68–69 (2000) (plurality opinion)). As a result, mandamus relief must be granted "to require a trial court to vacate orders erroneously permitting nonparents access to a child over a fit parent's objection." *Id.* at 811.

---

[5]As applicable, Section 153.131 states,

> (a) . . . [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

"However, the fit-parent presumption is not absolute, and may be rebutted." *In re B.B.*, 632 S.W.3d 136, 139 (Tex. App.—El Paso 2021, orig. proceeding); *see* TEX. FAM. CODE ANN. § 153.131(b). "While the United States Constitution protects a parent, who is not a 'model' parent but who can adequately care for their child from state interference in child-rearing decisions, an unfit parent (i.e. a parent who cannot adequately care for his children) is not entitled to such deference." *Id.* at 139 (citing *In re C.J.C.*, 603 S.W.3d at 817). Also, "[a] nonparent . . . appointed as a joint managing conservator may serve in that capacity with either another nonparent or with a parent of the child." TEX. FAM. CODE ANN. § 153.372(a) (Supp.).

Here, the trial court expressed its awareness of the fit-parent presumption when it found Father to be unfit based on, among other things, his drug history, admission that he was a party to three prior CPS cases involving drugs, and the procedural history of cases filed by the Department, which had removed the children from Father's care for twenty months. Citing to facts in his favor, Father's mandamus petition argues that the foster parents failed to rebut the fit-parent presumption, but we find that the trial court made a factual determination of Father's unfitness based on the totality of the record before it.

"[T]he law does not provide a basis for mandamus relief based on the trial court's factual determination and application of the law to that determination." *In re C.D.C.*, No. 05-20-00983-CV, 2021 WL 346428, at *2 (Tex. App.—Dallas Feb. 2, 2021, orig. proceeding) (citing *In re C.J.C.*, 603 S.W.3d at 808, 815–16). In other words, "[i]f the subject of the mandamus petition

---

(b)    It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child.

TEX. FAM. CODE ANN. § 153.131.

involves a factual dispute, mandamus relief is precluded." *In re Ater*, 2021 WL 5263693, at \*1 (citing *In re City of Galveston*, 622 S.W.3d 851, 858 (Tex. 2021) (citing *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978) (orig. proceeding) ("[A]n appellate court may not deal with disputed areas of fact in a mandamus proceeding.")); *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding) (same)).

Because Father seeks to overturn a factual finding determined by the trial court where some evidence supported the trial court's decision, we conclude that Father's complaint does not seek to compel a ministerial act not involving a discretionary or judicial decision. As a result, we overrule Father's first complaint since mandamus relief in a case like this one is inappropriate. *See In re C.D.C.*, 2021 WL 346428, at \*3 (declining to grant mandamus relief in a similar case involving the fit-parent presumption where there was some evidence to support a finding of unfitness because "the law does not provide a basis for mandamus relief based on the trial court's factual determination and application of the law to that determination.").

## IV.     Father Waived His Recusal Complaint

In his last point of error, Father cites to the record of the August 18 hearing and argues that "[i]f the trial judge was unable to make a ruling in the case without letting his prior history with [Father] bias his determination of whether [Father] is now a 'fit' parent, the proper procedure was to recuse prior to making findings and rulings, not after." We find this complaint waived.

Rule 18a of the Texas Rules of Civil Procedure governs the recusal of judges. That Rule requires a party seeking to recuse a trial judge to file a verified motion, which was not done in

10

this case. *See* TEX. R. CIV. P. 18a(a). A trial court may also raise the issue of recusal on its own motion. *Blackwell v. Humble*, 241 S.W.3d 707, 712 (Tex. App.—Austin 2007, no pet.); *see* TEX. GOV'T CODE ANN. § 24.002 (Supp.).

Here, all parties were aware that the trial judge was the same judge that had presided over the Department's two prior cases, but no party questioned the trial court's impartiality. While the trial judge's comments acknowledged that he was "aware of a lot of history with" Father, the trial judge did not recuse himself, and Father did not move for recusal. Instead, the trial judge announced his ruling that Father was unfit, which meant that the foster parents would have temporary conservatorship over the children, provided Father with visitation, ordered child support, and then said that he would no longer preside over the case—"I don't know that I can— well, I know that I can't move forward as the judge in this case."

Even so, rather than recuse, the trial court gave Father the option of either asking the judge to transfer the case or having the judge recuse if Father wished the case to remain in Harrison County. Father affirmatively selected the option to have the trial judge remain on the case so that he could grant Father's motion to transfer. Father also volunteered to draft the temporary orders he now complains of, after the trial court announced that Father and foster parents would be appointed temporary joint managing conservators of the children.

"The parties to a proceeding may waive any ground for recusal after it is fully disclosed on the record." TEX. R. CIV. P. 18b(e); *see Blackwell*, 241 S.W.3d at 712. We find that the trial court did not determine that recusal was necessary before entering temporary orders, that Father never requested the trial court to recuse, and that Father instead volunteered to draft the

11

temporary orders without voicing any objection to the trial court's comments. As a result, we find that Father waived the recusal complaint first argued in his petition for a writ of mandamus.

## V.      Conclusion

We deny the petition for a writ of mandamus.


Scott E. Stevens
Justice


Date Submitted:      February 7, 2022
Date Decided:        February 8, 2022

12